## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TAMMY CASTAGNOLI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 13-4055 |
| | ) | |
| THE CENTER FOR NEUROSCIENCES, | ) | |
| LLC and BASSAM ASSAF, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER AND OPINION</u>

This matter is now before the Court on Defendants' Motion [23] for Summary Judgment, Plaintiff's Response [35], and Defendants' Reply [38] thereto. The Motion is fully briefed, and for the reasons set forth below, Defendant's motion for summary judgment is GRANTED.

### BACKGROUND

Plaintiff, Tammy Castagnoli, was an employee of Defendant, The Center for Neurosciences, LLC ("The Center") from October, 2009 until her termination on January 6, 2012. Dr. Assaf is the physician and owner of The Center. Ms. Castagnoli brought this action against Defendants, alleging: (1) violation of the Illinois Minimum Wage Law, 820 ILCS 105/4(a) ("IMWL"), (2) the Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA"), and (3) the Illinois Wage Payment and Collection Act, 820 ILCD 115/4 ("IWPCA") for failure to compensate Plaintiff for 1 and ½ times her base pay rate for unpaid lunches and hours worked in excess of 40 hours in a particular workweek; (4) retaliatory discharge in violation of Illinois public policy, and (5) retaliatory discharge in violation of the FLSA.

Specifically, Castagnoli's claims relate to: (1) pay for working through her lunch break on unspecified days or weeks; (2) Castagnoli's overtime pay for hours worked in excess of 40

1

hours during the November 7 through November 18, 2011 pay period; and (3) her termination on January 6, 2012. Defendants dispute Castagnoli's wage claims, and they further allege that Plaintiff was terminated as a result of: (1) Plaintiff's hostile attitude and behavioral problems in dealing with The Center's patients; (2) Plaintiff's abuse of company time and resources for her own personal issues; and (3) Plaintiff's failure to perform her billing duties, which Dr. Assaf determined was causing The Center financial difficulties.

Plaintiff Castagnoli began working at The Center in October of 2009 in a full time billing position at an hourly rate of $12.50. Her scheduled hours were 8:00 a.m. to 4:30 p.m. Monday through Friday. The Center is a small medical office employing around four to six employees, including her direct supervisor and officer manager Denise Duethman. Castagnoli's job duties included scheduling patients, answering phone calls, checking patients out, collecting co-payments, posting accounts receivable, and performing electronic and manual billing.

### Events Leading to Plaintiff's Wage Claims and Subsequent Termination

In May of 2011, Dr. Assaf met with Plaintiff to discuss her performance relating to an incident where she refused to reimburse a patient for an incorrectly assessed no-show fee. Despite the patient calling numerous times, Plaintiff did not notify Duethman or Assaf about the incident. The patient later filed complaints with the Better Business Bureau because of the incident.

Also in May of 2011, Plaintiff was counseled by Assaf to refrain from making unilateral decisions on behalf of The Center that fell outside of her routine responsibilities after Plaintiff sent a fax to an attorney's office authorizing a one-third reduction in a patient's bill without first obtaining Assaf's approval.

On November 2, 2011, Duethman counseled Plaintiff about her interactions with patients after an incident where Plaintiff was abrupt and harsh to a patient who mistakenly showed up for an appointment on the wrong day. Duethman told her that she is not to make decisions regarding patient medical conditions or appointment issues without checking with Duethman or Assaf.

On November 7, 2011, Duethman counseled Plaintiff about making decisions regarding patients' medical conditions without consulting Duethman or Assaf first. This was in response to Plaintiff answering a nurse's phone call about a patient's condition by informing the nurse that The Center did not offer a particular service, and ending the call without informing Assaf or Duethman about the patient's condition or the substance of the phone conversation.

On November 9, 2011, Duethman met with Plaintiff to address numerous issues, including: Plaintiff contacting a health insurance company to apply for insurance directly instead of going through The Center as required; not clocking out on her time-card when she left for three hours on November 2, 2011; taking excessive time off from work, browsing the internet and attending to personal matters while at work, and shifting her hours without permission and marking those hours as overtime. Castagnoli was informed that she was not to work outside of the 8:00-4:30 business hours or on weekends without approval or request from Duethman or Assaf. Plaintiff also failed to submit billings on time for sleep studies in early November and was reminded that billing was to be submitted the same day it is received. Finally, Duethman told Castagnoli that her tone with patients is often harsh and aggressive, and she needed to be more friendly and courteous to patients.

On November 10, 2011, Duethman met with Plaintiff to remind her to consult with her supervisors when a patient makes a request, after Plaintiff ignored a request from a patient without looking into the issue or asking Duethman or Assaf.

On November 11, 2011, Dr. Assaf spoke with Plaintiff and denied her request to work on a Saturday. He reminded her that she needed to adhere to the regular 8:00-4:30 business hours unless approved or requested by Duethman or himself, and that if she is allowed to come in early or stay late on weekdays to make up for missed time within the same week, she was not to work overtime or exceed 40 hours per week.

On November 23, 2011, Duethman and Assaf met with Castagnoli in response to complaints made by the mother of a patient about Plaintiff's repeated rude behavior towards her.

On November 25, 2011, Plaintiff received a paycheck for the November 7 to November 18 pay period. Plaintiff's pay stub indicated she worked 33 ½ hours the first week and 45 hours the second week, for a total of 78.50. She was paid at the regular rate for all 78.50 hours.

On December 2, 2011, Duethman and Assaf met with Castagnoli, advising her that she had been working hours that deviated from the regular hours because of her personal issues, and that The Center did not request her to do so. She reminded of the earlier 11/11/2011 conversation where she was told that she could only make up for missed hours by shifting her work hours within the same day or same week, and she was not to exceed 40 hours. She was again told that she was to work from 8:00 to 4:30 unless directed otherwise.

On December 11, 2011, Plaintiff filed a complaint with the Illinois Department of Labor alleging violations of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* and the One Day Rest in Seven Act, 820 ILCS 140/1 *et seq.* for unpaid lunches and unpaid overtime. In the complaint form, Plaintiff checked the box indicating she wanted the complaint to remain confidential.

On December 29, 2011, the IDOL issued a letter to The Center seeking information related to Plaintiff's complaint.

4

On January 3, 2012, Dr. Assaf made the decision to terminate Plaintiff's employment after receiving an email on the same date from Plaintiff regarding billing not being processed for the month of December 2011 because Medicare constituted about 55% of the insurance spectrum, which is very significant.

On January 5, 2012, The Center received a letter from the IDOL. In addition, Plaintiff alleges that The Center received a phone call from an IDOL investigator that same day. (See Def. Ex. B at 249).

On January 6, 2012, Duethman and Assaf met with Castagnoli and advised her that she was terminated for: (1) major continued hostile and other behavioral problems in dealing with the patients of the company rather than working to help the patients and the company meeting its goal pertaining to the patient care and patient needs; (2) abuse of the company time and resources for her own personal issues such as performing her own personal affairs on the company's times and resources; and (3) continued gross negligence and failure to perform her work duties in billing processing and administration for the company with resultant severe financial difficulty for the company. In addition, Plaintiff alleges that Dr. Assaf stated "you better not fight this" after terminating her.

On January 9, 2012, Plaintiff requested a copy of her employment file, and on January 18th, The Center mailed plaintiff her personnel records.

On January 20, 2012, Plaintiff received her final paycheck for all of her regular pay. In addition, she was given 16 hours of "final pay."

**Defendant's Motion for Summary Judgment**

**1. Legal Standard**

A court shall grant summary judgment if the movant shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" *Id*. at 322-23.

## 2. Analysis

Defendants seek summary judgment as to Plaintiff's claims for the following reasons:

(1) Plaintiff's unpaid overtime claims fail because she cannot show The Center's records, which demonstrate that she was paid for all hours worked are inaccurate or inadequate, and she has not provided any evidence showing the amount of, or dates of her alleged unpaid work;

(2) Plaintiff's unpaid overtime claims arising from the November 7 to November 18 pay period should be denied because: (a) The Center has already paid any amounts allegedly owed to Plaintiff for this claim pursuant to the Illinois Department of Labor's determination in connection with Castagnoli's IDOL complaint and her claim is therefore barred by the doctrine of accord and satisfaction; (b) even if Plaintiff's claim was not barred, it fails as a matter of law because Castagnoli cannot prove that she actually performed the work for which she claims she was improperly compensated; and (c) Plaintiff's claims for unpaid overtime should be dismissed because The Center had expressly instructed Castagnoli not to work outside of The Center's normal business hours without prior approval days before the pay period in which she claims to have worked unpaid overtime in November of 2011;

(3) Plaintiff's claim for retaliatory discharge in violation of Illinois public policy fails as a matter of law because no reasonable trier of fact could find Plaintiff's filing of a complaint with IDOL to be the "but for" cause of her discharge, in light of The Center's evidence that Plaintiff was discharged for

her ongoing performance issues that preceded her alleged protective activity, as well as Dr. Assaf's lack of knowledge that Plaintiff had filed any complaints with the Illinois Department of Labor at the time he made the decision to terminate her employment;

(4) Plaintiff's FLSA retaliatory discharge claim fails because she cannot show a causal link between her protected activity and her termination, and Plaintiff cannot demonstrate that The Center's legitimate, non-discriminatory reason for her termination is a pretext for discrimination under the FLSA.

### a) Plaintiff's Wage Claim for Unspecified Overtime and Unpaid Lunch

Plaintiff alleges in her Complaint that The Center failed to pay her for overtime and time spend working through lunch in violation of the Fair Labor Standards Act (29 U.S.C. § 207)[1], the Illinois Minimum Wage Law (820 ILCS 105/4(a))[2], and the Illinois Wage Payment Collection Act (820 ILCS 115/4)[3].

Plaintiff has the burden of proving that she performed overtime work for which she was not properly compensated. See *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 691 (7th Cir. 2010). Because Plaintiff alleges that her employer's records are not accurate, she has the burden of producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. *Turner*, 595 F.3d at 691 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) *superseded on other grounds by statute,* 29 U.S.C. §§251-62). If such a showing is made, the burden then shifts to the employer to produce evidence of either the precise amount of work performed, or evidence negating the reasonableness of the inference to be drawn

---

[1] Section 207 of the FLSA states:(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. § 207.

[2] Chapter 105, Section 4(a) of the Illinois Minimum Wage Law states, in relevant part: . . . on and after July 1, 2010 every employer shall pay to each of his or her employees who is 18 years of age or older in every occupation wages of not less than $8.25 per hour. 820 ILCS 105/4.

[3] Chapter 115, Section 4 of the Illinois Wage Payment Collection Act states: 4. All wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned. 820 ILCS 115/4.

from the employee's evidence. *Marchman v. Advocate Bethany Hosp.*, 2006 WL 1987815 at *7-8 (N.D. Ill. 2006) (citing *Anderson*, 328 U.S. at 687).

Here, Plaintiff agrees with Defendants that the burden ultimately rests on her to prove she performed work for which she was not compensated *at trial*. However, in response to Defendants' Motion for Summary Judgment, Plaintiff argues that she "is not held to the standard of producing material evidence in order to defeat Defendant's summary judgment motion— rather, Plaintiff must show that there is a genuine dispute of material facts as to whether that Defendant has shown that their employment records are valid." Plaintiff argues that a genuine dispute of material fact exists regarding the accuracy of The Center's employment records because when she requested her personnel record from The Center on January 9, 2012 it only contained one time card.

Plaintiff's claim for unspecified unpaid lunches and overtime fails as a matter of law because she has offered no evidence to show she performed work for which she was not compensated. Indeed, as *Plaintiff's* statement of undisputed material fact concedes, "Plaintiff has no independent recollection as to what days she took a lunch break and what days she did not . . . Plaintiff has no documentary evidence that supports her claim that she ever worked through a lunch break without being paid for her hours worked." Plaintiff's Response, pg. 4 at ¶39. And "[w]henever Castagnoli notified [The Center] of an instance in which she worked through lunch, she was paid for her time worked through lunch." Plaintiff's Response at pg. 3, ¶37. Furthermore, with the exception of one pay period in November 2011, Plaintiff does not claim that The Center's payroll records are inaccurate. All Plaintiff alleged is that The Center's records were incomplete because the employment record she requested (before this case was filed) did

not contain copies of her pay stubs. She does not identify any specific days where she was not paid for working lunches, nor does she know what work she performed during those times.

Because Plaintiff has failed to meet her burden of proving she performed work during lunches for which she was not properly compensated, and has further failed to "produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," Plaintiff's claim for unpaid wages relating to work performed during lunch breaks should be dismissed. See *Turner*, 595 F.3d at 691 ("Although Turner disputes the accuracy of The Saloon's records, his mere assertions are insufficient to create a jury issue.").

**b) Plaintiff's Claim for Unpaid Overtime from November 7 to November 18, 2011**

Plaintiff's Complaint also claims violations of the FLSA and IMWL, alleging unpaid overtime for work performed outside of business hours during the November 7 to November 18, 2011 pay period. Defendants move for summary judgment on this claim because: (1) The Center had already paid any amounts allegedly owed to Plaintiff pursuant to the Illinois Department of Labor's determination relating to Plaintiff's IDOL complaint and the claim is therefore barred by the doctrine of accord and satisfaction; (2) alternatively, Plaintiff's claim fails as a matter of law because she cannot prove that she actually performed the work for which she claims she was improperly compensated; and (3) her claim should be dismissed because The Center expressly instructed Castagnoli not to work outside of The Center's normal business hours without prior approval only days before the pay period in which she claims to have worked unpaid overtime in November 2011. Plaintiff failed to respond to the portion of Defendants' motion for summary judgment addressing the unpaid overtime claim for the November 2011 pay period.

When a motion for summary judgment is presented to the Court, it is viewed in the light most favorable to the non-moving party. *Salvadori v. Franklin Sch. Dist.,* 293 F.3d 989, 992 (7th

Cir. 2002). However, when a party fails to respond to a motion for summary judgment, that failure constitutes an admission by the non-movant that there are no disputed issues of genuine fact warranting a trial. See *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—*including the facts considered undisputed*—show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e) (emphasis added); See also Local Rule 7.1(D)(1)(c) ("Argument: With or without additional citations to authorities, respond directly to the argument in the motion for summary judgment, for example, by explaining any disagreement with the movant's explanation of each point of law, why a point of law does not apply to the undisputed material facts, why its application does not entitle movant to relief or why, for other reasons, summary judgment should not be granted.").

Here, Plaintiff did not directly respond to the argument in Defendants' motion for summary judgment. However, Plaintiff's response included a recitation of material facts not in dispute, such as:

¶42. Plaintiff testified that she did not have any wage issues in 2009 or 2010.
¶43. Plaintiff acknowledged during her deposition that the first time she had any issues with alleged unpaid overtime was during the November 7 to November 18, 2011 pay period.
¶¶44, 45. Plaintiff admits that she received payment in the amount of $33.75 in response to the Illinois Department of Labor's determination on her claim for alleged unpaid overtime, she does not dispute the IDOL's finding, and that she does not have any additional evidence other than what was submitted to IDOL.
¶46. Plaintiff further admitted that she punched in before The Center's normal business hours began, when her supervisor was not present, on a number of days during the disputed pay period.

¶47. She admitted that she has no documentary evidence as to what work she would have performed during the non-business hours, and the only work she could remember performing was janitorial duties not previously identified by Castagnoli as falling within her positions responsibilities. She could not recall what work, if any, she performed during a number of the non-business hours which she claims to have worked.

¶48. The non-business hours claimed to have been worked by Castagnoli during the single November 2011 pay period took place only days after Castagnoli had been expressly instructed by The Center not to work outside of TCN's normal business hours without prior approval from Dr. Assaf or Denise Duethman—and that even in these circumstances Castagnoli was directed not to work more than 40 hours within a single workweek. No such approval was given to Castagnoli to work overtime hours for the pay period of November of 2011.

Plaintiff has the burden of proving that she performed overtime work for which she was not properly compensated. See *Turner*, 595 F.3d at 691. If Plaintiff alleges that her employer's records are not accurate, she has the burden of producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. *Turner*, 595 F.3d at 691 (citing *Anderson*, 328 U.S. at 687). If such a showing is made, the burden then shifts to the employer to produce evidence of either the precise amount of work performed, or evidence negating the reasonableness of the inference to be drawn from the employee's evidence. *Marchman*, 2006 WL 1987815 at *7-8 (N.D. Ill. 2006) (citing *Anderson*, 328 U.S. at 687).

The IWPCA requires that all wages earned by employees during a bi-weekly pay period be paid not more than 13 days after the end of the pay period in which the wages were earned. The FLSA and the IMWL require employers to compensate their employees at a rate of at least 1 and ½ times their normal rate of pay for any hours worked in excess of 40 hours in a given week. Here, the Complaint, together with the depositions and exhibits, shows that Plaintiff was paid for 78.50 hours at her regular pay rate for the November 7 to November 18, 2011 pay period—33.50 hours for the week ending on November 11, 2011, and 45 hours for the week ending in on November 18, 2011. See Defendants Exhibit HH. Thus, Plaintiff has met her initial burden of

11

showing that she was not properly compensated for the 5 hours worked in excess of 40 for the November 18, 2011 work week.

Because Plaintiff has met her initial burden of showing that she performed work for which she was not compensated, the burden shifts to Defendants to show either the precise amount of work performed, or evidence negating the reasonableness of the inference to be drawn from the employee's evidence. *Marchman*, 2006 WL 1987815 at *7-8 (N.D. Ill. 2006). Here, Defendants claim that Plaintiff's unpaid overtime claim fails as a matter of law because The Center expressly instructed Castagnoli that she was prohibited from working overtime hours or hours outside of The Center's normal business hours. However, 29 C.F.R. § 785.13 states:

> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. *The mere promulgation of a rule against such work is not enough*. Management has the power to enforce the rule and must make every effort to do so. 29 C.F.R. § 785.13(emphasis added)

Thus, Defendants cannot rely solely on their express instructions to Plaintiff not to perform overtime work. Rather, the standard is whether the employer had actual or constructive knowledge that the employee is working overtime. See *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011)

In *Kellar*, the Seventh Circuit found that "[a]lthough [the employee's] work activities were neither preliminary nor *de minimis*, her claimed work is nevertheless non-compensable" because the employer neither knew nor should have known that the employee was working overtime. *Id*. In determining whether an employer had actual or constructive knowledge of an employee's overtime work, "[a] court need only inquire whether the employer had the opportunity through reasonable diligence to acquire knowledge." *Id*. (citing *Reich v. U.S. Dep't of Conservation & Natural Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994). Like the

employer in *Kellar*, Castagnoli's time card showed that she clocked in before normal work hours. See *Kellar*, 664 F.3d at 177. However, unlike *Kellar*, where the "employees were in the habit of punching in early and then socializing until their work shifts began," Defendants in this case had "reason to suspect [Plaintiff] was acting contrary to the conditions prevailing in their business generally." *Cf. Kellar*, 664 F.3d at 177 ("Kellar's behavior raised no flags"). Had The Center exercised reasonable diligence, they would have had the opportunity to acquire knowledge of Plaintiff's hours by checking her time card that week. See *Id.* at 177. Thus, Defendants' claim that they lacked actual or constructive knowledge because they explicitly told Plaintiff not to work overtime is insufficient to rebut Plaintiff's claim.

Defendants next argue that Plaintiff's unpaid overtime claim fails as a matter of law because Castagnoli cannot prove that she actually performed the work for which she claims she was improperly compensated, and further, that she failed to produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. See *Anderson*, 328 U.S. at 686-88. In support of this claim, Defendants argue that the work Castagnoli allegedly performed—janitorial duties—was not a duty identified by Plaintiff as falling within her position's responsibilities. Plaintiff concedes as much in her response. See Pla. Resp. at ¶47. The Supreme Court recently addressed whether an employee's preliminary activities are compensable under the FLSA, as amended by § 251 *et seq,*. in *Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513 (2014).

In *Integrity Staffing*, the Supreme Court held that a warehouse employee's time spent waiting to undergo security screenings was not compensable under the FLSA because the pre- or post- liminary activities were not the principal activity or activities which the employee was employed to perform, and the screenings were not integral and indispensable to the employee's

13

duties. *Id*. at 518. The Court reasoned, "[a]n activity is therefore integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id*. Here, the record is insufficient for the Court to conclude as a matter of law whether or not Plaintiff's pre-business hours activities constituted compensable time. Concededly, Plaintiff cannot remember the specific activities she performed during the week ending on November 18, 2011, the "janitorial duties" likely fell outside of the responsibilities of her job as a billing manager, and Plaintiff has not provided evidence that such duties were "activities which the employee was employed to perform" or were "integral and indispensable" to her duties. See *id*. But whether Plaintiff was routinely asked or expected to do janitorial duties in addition to her billing duties is unclear from the record, and Defendants' motion for summary judgment is silent on the issue. As such, whether Plaintiff's pre-business hours activities on the week in question were compensable under the FSLA or IMWL presents a question of material fact that would preclude a grant of summary judgment. However, because Defendants have shown as a matter of law that Plaintiff's overtime claim is barred under the alternative theory of accord and satisfaction, discussed *infra*, summary judgment for the overtime claims is warranted.

Plaintiff's overtime claim is barred because she already received payment for any unpaid overtime in response to the IDOL investigation. Plaintiff's response to Defendant's motion for summary judgment includes paragraphs 44 and 45 as undisputed material facts. Those facts state that "Plaintiff admits that she received payment in the amount of $33.75 in response to the Illinois Department of Labor's determination on her claim for alleged unpaid overtime," that "she does not dispute the IDOL's finding," and that "she does not have any additional evidence other than what was submitted to IDOL."

In *Ecker v. Big Wheels, Inc*., an Illinois appellate court was confronted with a wage claim similar Castagnoli's claim. 136 Ill. App. 3d 651 (Ill. App. 1985). That court held that the plaintiff's claim was barred because he had already recovered the disputed unpaid overtime through an IDOL proceeding. *Id*. at 654-55. ("[W]e do not deem the intent of section 12 of the Minimum Wage Law to be to subject the employer to actions by both the employee and the Department. Rather the intent is to enable the employer to negotiate in good faith with the Department and to be free from suit by the employee-assignor while the assignment is in effect."). Moreover, the court held "that an accord and satisfaction occurs when, after assigning a wage claim to the Department, an employee accepts from the employer, the amount determined by the Department to be due to the employee. Any other interpretation would constitute a substantial deterrent to employer cooperation with the Department." *Id*. at 655.

In sum, Plaintiff's unpaid overtime claim fails as a matter of law because she was already compensated for any unpaid overtime through the favorable outcome of the IDOL proceeding.[4] Plaintiff does not dispute the IDOL's determination or the amount awarded to her, and she concedes that she has no additional evidence outside of what she provided to IDOL. Although Plaintiff's claim may not be barred by *res judicata,* because the Illinois Department of  Labor is not a judicial body, Plaintiff is not re-litigating the IDOL *determination*. Rather, she is seeking the same recovery for the exact same claim that she was already awarded.  Thus, a grant of summary judgment in favor of Defendants is proper.

### c) Plaintiff's Claim for Retaliatory Discharge in Violation of Illinois Public Policy

Plaintiff next claims that she was discharged in retaliation for her IDOL complaint in violation of Illinois public policy. In order to state a claim for retaliatory discharge, an employee

---

[4] In addition to Plaintiff recovering $33.75 from The Center after her successful IDOL claim, The Center also included 16 hours of "final pay" in Plaintiff's last paycheck.

must show: "(1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Turner v. Mem'l Med. Ctr.*, 233 Ill.2d 494, 500, 331 Ill.Dec. 548 (2009). A plaintiff has the burden of proof to demonstrate the employer's motive in discharging the employee, and a defendant need not come forward with an explanation for the discharge. *Clemons v. Mech. Devices Co.*, 184 Ill.2d 328, 338-39 (1998). If the employer does show a valid, non-pretexual basis for the employee's discharge "and the trier of fact believes it, the causation element require[d] to be proven is not met." *Id*. at 336. The Illinois One Day Rest in Seven Act ("ODRISA") is recognized by Illinois courts as a clear mandate of public policy. See *Carty v. Suter Co., Inc.*, 371 Ill. App. 3d 784, 788 (2007) ("[The] legislature has clearly mandated a public policy that certain employees have statutory rights to 20–minute lunch breaks and that their employers have statutory obligations to provide such breaks.").

The parties agree that Plaintiff was discharged, and that the ODRISA provides a clear mandate of public policy. Defendants assert that the claim fails as a matter of law because Plaintiff cannot establish the second element—that her termination was in retaliation for her IDOL complaint. As discussed above, Defendants have produced detailed documentation of Castagnoli's ongoing performance issues at The Center. Plaintiff's disclosures include several emails sent to her from her own personal email account that acknowledge that she was counseled by Duethman and/or Assaf for the same issues memorialized in her personnel record. *Plaintiff's* response to Defendants' motion for summary judgment states, as immaterial but undisputed fact:

> ¶32. Dr. Assaf *made the decision on January 3, 2012 that Plaintiff's employment was to be terminated*. Dr. Assaf made this decision after receiving a January 3, 2012 email from Plaintiff regarding billing not being processed for the month of December 2011 because Medicare constituted about 55% of the insurance spectrum, which is very significant. Dr. Assaf determined at this time Plaintiff

16

had demonstrated an inability to process her work and report to her supervisors.

¶33. Following his receipt of Plaintiff's January 3, 2012 email and his decision to terminate Plaintiff's employment, Dr. Assaf consulted with [The Center's] then legal counsel and also made attempts to obtain from Plaintiff all of the emails in her possession relating to the billing issues from December of 2011 prior to notifying her of her termination on January 6, 2012. Plaintiff's failure to provide Dr. Assaf and Denise with the requested emails in a timely manner only served to reinforce the *decision made on January 3, 2012 to terminate Plaintiff's employment*.

Plaintiff also alleges that when she was terminated on January 6, 2012, Dr. Assaf told her that she "better not fight it." From this alleged statement, Plaintiff argues, "it would be fair to infer . . . that Dr. Assaf knew of Plaintiff's complaint to the [IDOL]" because without any knowledge of the complaint, "Dr. Assaf would have had no reason to threaten plaintiff and attempt to dissuade her from fighting her termination."

Plaintiff's argument fails for multiple reasons. First, her own recitation of undisputed facts plainly concedes that Dr. Assaf made the decision to terminate Castagnoli on January 3, 2012. Plaintiff's *a priori* characterization of that fact as immaterial does not necessarily make it so—rather, "[t]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, the issue is whether Plaintiff was terminated in retaliation for filing her IDOL complaint. And in order for The Center's termination of Plaintiff to be retaliatory, The Center must have known of the underlying conduct giving rise to the retaliation. Thus, Plaintiff's own admissions show that Defendants' decision to terminate Plaintiff on January 3, 2012 occurred two days before the letter and/or phone call from the IDOL was received by the office. See Def. Ex. B at 249. Therefore, there is simply nothing in the record to support Plaintiff's allegations that Defendants knew of the complaint with IDOL in regard to retaliatory discharge. Even if Plaintiff's argument could support the inference that Defendants knew of the complaint before her termination, "mere temporal proximity between the

filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone v. City of Indianapolis Pub. Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002).

In order to bolster her retaliation claim, Plaintiff filed an affidavit with her response to the motion for summary judgment. The unsworn affidavit states, "[d]uring my employment, I was not spoken to or counseled about any alleged issue with my job performance by either Defendant." That statement is irreconcilable with Plaintiff's deposition testimony, Plaintiff's emails to herself specifically referencing the instances when she was reprimanded, and portions of Plaintiff's response to the motion for summary judgment itself. "It is well settled in the Seventh Circuit that a party cannot create an issue of material fact simply by creating a conflict in his own testimony by submitting an affidavit that contradicts an earlier deposition." *Cent. States, S.E. & S.W. Area Pension Fund v. Neiman*, No. 99 C 1181, 2000 WL 310285, at *6 (N.D. Ill. Mar. 24, 2000); see also *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532 (7th Cir. 1999), *Beck v. University of Wisconsin Board of Regents,* 75 F.3d 1130, 1134 (7th Cir. 1996).

Defendants have supported their motion for summary judgment with specific facts showing that The Center lacked knowledge of Castagnoli's IDOL complaint at the time the decision was made to terminate Plaintiff, and that significant reoccurring problems with Plaintiff's job performance led to her termination. Plaintiff's unsupported allegation in her affidavit that she gave verbal permission to the IDOL to contact The Center on January 5, 2012 directly contradicts her earlier testimony where she acknowledged that she checked the box on the IDOL form indicating she wanted the complaint to be kept confidential. Plaintiff "may not rest upon the mere allegations or denials of [Defendants'] pleading, but the adverse party's response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing

that there is a genuine issue for trial." *Marchman v. Advocate Bethany Hosp.*, 2006 WL 1987815

at *3-4 (N.D. Ill. 2006); Fed. R. Civ. P. 56(e). Here, Plaintiff has failed to do so. Castagnoli's

affidavit and verbal representations are continually at conflict with the documentary evidence in

the record. As such, Defendants are entitled to a grant of summary judgment on the retaliatory

discharge in violation of Illinois public policy claim.

### d) Plaintiff's Claim for Retaliatory Discharge in violation of FLSA

Plaintiff's final claim is for retaliatory discharge in violation of Section 215 of the Fair

Labor Standards Act, which states:

> (a) After the expiration of one hundred and twenty days from June 25, 1938, it
> shall be unlawful for any person . . . (3) to discharge or in any other manner
> discriminate against any employee because such employee has filed any
> complaint or instituted or caused to be instituted any proceeding under or related
> to this chapter, or has testified or is about to testify in any such proceeding, or has
> served or is about to serve on an industry committee . . .
> 29 U.S.C.A. § 215.

"A plaintiff in an employment retaliation case has two distinct approaches to prevent summary

judgment from being granted." *Cichon v. Exelon Generation Co.*, No. 02 C 3441, 2003 WL

22169761, at *4 (N.D. Ill. Sept. 18, 2003) *aff'd sub nom. Cichon v. Exelon Generation Co.*, 401

F.3d 803 (7th Cir. 2005). Under the direct method of proof, a Plaintiff is required to present

direct evidence that she engaged in protected activity and suffered an adverse employment action

based on the employer's retaliatory intent. *Id*. Under the indirect burden-shifting method of

proof, the employee must first present evidence sufficient to establish a *prima facie* case that his

employer retaliated against him in violation of a statute's anti-retaliation provisions. If the

employee fails to establish any element of the *prima facie* case, the employer is entitled to

summary judgment. If, however, the employee succeeds in establishing a *prima facie* case, the

employer must offer a legitimate, non-invidious reason for the adverse employment action. If the

employer can do so, the burden of production shifts back to the employee to demonstrate that the employer's justification was pretextual. If the employee fails to meet that burden, the retaliation claim cannot survive summary judgment. *Cichon* at *4-5; see also *Stone*, 281 F.3d at 644; *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

The direct method of proof requires Plaintiff to present direct evidence that she engaged in protected activity and suffered an adverse employment action based on the employer's retaliatory intent. *Cichon* at *4-5. Plaintiff's argument that the proximity between The Center *possibly* learning about her complaint and her termination, together with Dr. Assaf's ambiguous statement "you better not fight this" is insufficient to show retaliation. This conclusion is bolstered by Plaintiff's own admission that Dr. Assaf made the decision to terminate Castagnoli two days before The Center is alleged to have knowledge of the complaints.  Because Plaintiff has failed to show retaliatory intent, as discussed in the analysis of her previous public policy claim, she cannot survive summary judgment for her FLSA claim under the direct method of proof.

In order to establish a prima facie case of retaliation under the indirect method of proof, Plaintiff must demonstrate that: (1) she engaged in a protected activity under the FLSA; (2) she suffered an adverse employment action; and (3) there was a causal link between the two. *Stutler v. Illinois Dep't of Corr.*, 263 F.3d 698, 702 (7th Cir. 2001). Here, Plaintiff has established the first and second elements of a *prima facie* case—she filed an IDOL complaint and her employment was terminated. The third element, a causal link between the protected activity and the adverse employment action, is perhaps less exacting than the "retaliation" requirement under the direct method of proof or in Plaintiff's other retaliatory discharge claim. Plaintiff concedes that "only showing a short amount of time between the claims being filed and the adverse

employment action is not usually enough to survive summary judgment," but argues that an inference of retaliation can be found in Assaf's alleged "you better not fight this" statement. Yet nothing in Assaf's alleged statement indicates he knew of Plaintiff's previous complaint, or that she was terminated because of that complaint. Regardless, as discussed below, even if Plaintiff met her burden of establishing a *prima facie* case, Defendants can establish a legitimate non-invidious reason for her termination.

Plaintiff's performance issues have been well-documented by Defendants, dating back as early as May of 2011 and continuing through her termination in January of 2012. Castagnoli's own emails to herself verify that Plaintiff's performance issues stated in the office memoranda were actually communicated to her by Assaf or Duethman. Plaintiff was terminated as a result of: (1) Plaintiff's hostile and behavioral work problems in dealing with The Center's patients; (2) Plaintiff's abuse of company time and resources for her own personal issues; and (3) Plaintiff's failure to perform her billing duties, which Dr. Assaf determined was causing The Center financial difficulties. Castagnoli stated in her retaliation complaint to the IDOL that these were the grounds The Center communicated to her when she was terminated. Plaintiff was counseled on six separate occasions in November 2011 alone in order to address multiple problems with Castagnoli's interactions with patients, erratic hours and abuse of company resources, and significant errors and delays in billings. Thus, Defendants have met their burden of showing legitimate, non-invidious reasons for Castagnoli's termination.

Because Defendant's have shown legitimate, non-invidious reasons for Plaintiff's termination, the burden shifts back to Castagnoli to show that the justifications were merely a pretext. *Cichon* at *4-5; see also *Stone*, 281 F.3d at 644, *McDonnell-Douglas Corp.*, 411 U.S. at 802-04. If she cannot do so, a grant of summary judgment is appropriate. *Id*. In her response,

Plaintiff mistakenly places this burden on Defendants. ("Defendant has failed to show that their stated reason for terminating Plaintiff was not a pretext by undisputed material facts."). Moreover, Plaintiff's argument is especially weak because the majority of the documented performance problems leading to Castagnoli's termination occurred before Plaintiff ever filed her IDOL complaint on December 11, 2011. And almost every instance relied upon by Defendants for Castagnoli's termination occurred before The Center had *notice* of the IDOL complaint. "When an employee is disciplined for the same violation before filing a charge of discrimination, this discipline 'undermines the reasonableness of any inference' that the charge triggered any later discipline." *Hall v. Illinois Bell Tel. Co.*, 598 F. App'x 446, 448 (7th Cir. 2015) citing *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008). Again, Plaintiff's claim that she was not counseled regarding these incidents is disingenuous and flatly contradicted by Plaintiff's own testimony and emails.

In conclusion, even if Plaintiff established a *prima facie* case of retaliation, Defendants had legitimate, non-invidious justifications for her termination and Plaintiff offered no evidence that those justifications were pretextual. Therefore, summary judgment in favor of defendants is appropriate.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for summary judgment [23] is granted.

Entered this 23rd day of December, 2015

s/ James E. Shadid
James E. Shadid
Chief United States District Judge